IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MILTON N. WILLIAMS,**

Petitioner,

v.

Civil Action No. **3:15CV690**

**COMMONWEALTH OF VIRGINIA,** *et al.,*

Respondent.

### MEMORANDUM OPINION

Milton N. Williams, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 9) challenging his convictions in the Circuit Court of the City of Hampton, Virginia ("Circuit Court"). Respondent moves to dismiss primarily on the ground that, *inter alia*, the one-year statute of limitations governing federal habeas petitions bars the § 2254 Petition. Williams has responded. While the Court does not find the § 2254 Petition barred by the statute of limitations, for the reasons set forth below, the Motion to Dismiss (ECF No. 13) will be GRANTED.

### I. PROCEDURAL HISTORY

Williams pled guilty to object sexual penetration and sexual battery. On June 22, 2012, Williams was sentenced to twenty years of incarceration, with seven years and five months suspended, on the object sexual penetration count, and to twelve months of incarceration, with all twelve months suspended, on the sexual battery count. (*See* ECF No. 15–3, at 1.) Williams did not appeal his convictions.

On August 7, 2012, Williams filed a letter asking the Circuit Court to reconsider his sentence. Letter 1–4, *Williams v. Commonwealth*, No. CR11–1088 (Va. Cir. Ct. filed Aug. 7,

2012). The Circuit Court construed the letter as a motion for reconsideration and directed a response from the Commonwealth. Letter 1, *Williams*, No. CR11–1088 (Va. Cir. Ct. Aug. 10, 2012). The Circuit Court did not deny the motion for reconsideration until March 14, 2016. *Williams*, No. CR11–1088 (Va. Cir. Ct. Mar. 14, 2016).

On August 7, 2013, Williams filed a petition for a writ of habeas corpus in the Circuit Court. Petition for Writ of Habeas Corpus at 6, *Williams v. Commonwealth*, No. CL13–2095 (Va. Cir. Ct. filed Aug. 7, 2013) ("State Habeas Petition"). In that petition, Williams raised the following claims for relief:

Claim a: "Involuntar[y] plea of guilty" because his counsel and prosecutor told him he would receive a greater sentence if he did not plead guilty and created an unfair pretrial atmosphere. *Id.* at 4; (ECF No. 15–3, at 2.)

Claim b: "Counsel fail[ed] to introduce mitigating [DNA] evidence." State Habeas Pet. 4.

Claim c: Counsel "violat[ed] Williams's] right to have favorable witnesses testify." *Id.*

On June 4, 2014, the Circuit Court denied the petition. (ECF No. 15–3, at 11.) On September 9, 2014, Williams filed a petition for appeal in the Supreme Court of Virginia. Petition for Appeal at 1, *Williams v. Commonwealth*, No. 141341 (Va. Sept. 9, 2014). On June 26, 2015, the Supreme Court of Virginia denied Williams's petition, and on October 15, 2015, the Supreme Court of Virginia denied his petition for rehearing. *Williams*, No. 141341, at 1 (Va. June 26, 2015); *Williams*, No. 141341, at 1 (Va. Oct. 15, 2015).

On December 8, 2014, during the pendency of his collateral appeal, Williams filed a second petition for a writ of habeas corpus in the Circuit Court. *See* Petition for Writ of Habeas Corpus at 6, *Williams v. Commonwealth*, No. CL14–2368 (Va. filed Dec. 8, 2014). On March 5, 2015, the Circuit Court dismissed the petition, *inter alia*, as barred by the statute of limitations

and as successive pursuant to sections 8.01–654(A)(2) and (B)(2) of the Virginia Code. *See Williams v. Commonwealth*, No. CL14–2368, at 1–4 (Va. Cir. Ct. Mar. 5, 2015) (citations omitted). The Supreme Court of Virginia refused Williams's petition for appeal.[1]

On November 9, 2015, Williams filed his § 2254 Petition with this Court.[2] In his § 2254 Petition, Williams asserts the following claims for relief:

| | |
|---|---|
| Claim One: | (a) "Involuntary plea of guilty." (§ 2254 Pet. 5.)<br>(b) The Circuit Court failed to act when Williams wanted to file a complaint against his attorney. (*Id.* at 5–6.) |
| Claim Two: | "Counsel fail[ed] to introduce mitigating [DNA] evidence." (*Id.* at 10.) |
| Claim Three: | "Ineffective assistance of counsel" because counsel failed to present mitigating evidence or put on a defense case. (*Id.* at 12–13.) |
| Claim Four: | Counsel violated Williams's "[r]ight to have favorable witness[es]" during sentencing. (*Id.* at 15.) |
| Claim Five: | Counsel "fail[ed] to inform Petitioner of the right to appeal." (*Id.* at 19.) |

## II. STATUTE OF LIMITATIONS

### A.    Statute of Limitations

Respondent contends, *inter alia*, that the federal statute of limitations bars Williams's claims. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ

---

[1] *See* http://www.courts.state.va.us/main.htm (select "Case Status and Information;" select "Supreme Court of Virginia" from drop-down menu; follow "SCMS-SCV" button; type "150779" under "CASE INFORMATION" and follow "Find" button).

[2] This is the date that Williams states that his original § 2254 petition was deposited in the prison mailing system (*see* ECF No. 1, at 14), and the Court deems this as the date the § 2254 Petition was filed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988). The Court later required Williams to place his claims for relief on the standardized forms, and that § 2254 Petition (ECF No. 9) supplanted the original § 2254 petition. The Court utilizes that pagination assigned to the § 2254 Petition by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Williams's submissions.

of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically,

28 U.S.C. § 2244(d) now reads:

1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

2. The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## B. Commencement and Running of the Statute of Limitations

Williams's judgment became final on Monday, July 23, 2012, when the time to file a direct appeal expired. *See Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); Va. Sup. Ct. R. 5A:6(a) (providing no appeal allowed unless notice of appeal filed within thirty days of final judgment). The limitation period began to run the following day, on July 24, 2012.

Respondent argues that because Williams failed to file any state or federal petition by July 24, 2013, his federal petition is untimely. Respondent, however, fails to address fully Williams's potential entitlement to statutory tolling.

### C.     Statutory Tolling

Previously, the United States Court of Appeals for the Fourth Circuit held that "under the plain language of section 2244(d)(2) . . . the applicable one-year statute of limitations is tolled only for state collateral, post-conviction review." *Walkowiak v. Haines*, 272 F.3d 234, 236 (4th Cir. 2001) (citation and emphasis omitted). The Fourth Circuit noted that "the term 'collateral review' refers to a proceeding separate and distinct from that in which the original judgment was rendered, and in which the petitioner challenges the legality of the original judgment." *Id.* at 237 (citation omitted). The Fourth Circuit concluded that a motion brought under Rule 35(b) of the West Virginia Rules of Criminal Procedure did not satisfy the definition of collateral review because it asked the same judge who presided over the movant's case to modify the sentence imposed. *Id.* at 237–38.

In 2011, however, the Supreme Court abrogated the Fourth Circuit's decision in *Walkowiak. See Wall v. Kholi*, 562 U.S. 545, 559 (2011). In *Kholi*, the Supreme Court defined collateral review of a judgment to mean "judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Id.* at 553. Applying this definition, the Court concluded that a motion to reduce sentence, brought under Rule 35 of the Rhode Island Rules of Criminal Procedure, was "an application for 'collateral review' that triggers AEDPA's tolling provision." *Id.* at 556.

Respondent fails to address the effect on the federal limitation period of Williams's letter motion for reconsideration that was filed on August 7, 2012 and was not denied by the Circuit

5

Court until March 14, 2016. Under the *Kholi* court's definition of "collateral review," Williams's letter motion for reconsideration of sentence may constitute a collateral application for relief that, pursuant to § 2244(d)(2), tolled the one-year limitation period for nearly three and a half years. Because Respondent fails to address this letter motion for reconsideration, the Court declines to find Williams's § 2254 Petition barred by the statute of limitations.

## III.   CLAIM NOT COGNIZABLE IN FEDERAL HABEAS

In Claim One (b), Williams faults the Circuit Court for ignoring his request to file a complaint, presumably with the state bar, against his counsel. To the extent Williams even alleges an error attributable to the Circuit Court, Williams's claim alleges a violation of state law, not constitutional law. The Circuit Court's purported error provides no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"). Claim One (b) will be DISMISSED.

## IV. THE APPLICABLE CONSTRAINTS UPON
## FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may

not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state

court unless the adjudicated claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a

federal court believes the state court's determination was incorrect but whether that

determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550

U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

## V.  CLAIM BARRED BY VALIDLY ENTERED GUILTY PLEA

In Claim One (a), Williams argues that his guilty plea was involuntary. Williams claims

that he "never really wanted to plead guilty," but counsel told him that if he did not "more

charges would be added to [his] case." (§ 2254 Pet. 5.) Williams contends that counsel

pressured him to plead guilty. (Resp. 3, ECF No. 18.) The Circuit Court found, *inter alia*, that

this claim "is meritless and belied by the record." (ECF No. 15-3, at 2.)[3]  During the plea

colloquy, the Commonwealth explained the factual basis for the plea as follows:

---

[3] The Circuit Court also explained that "Petitioner's claim is not cognizable because the voluntariness of his plea could have been, . . . but was not, challenged at trial or on direct review. *See Slayton v. Parrigan*, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974)." (ECF No. 15-3, at 2.) This claim would be procedurally defaulted and barred from review here. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) ("If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991))); *see Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997) (holding that *Slayton* constitutes an adequate and independent state procedural rule when so applied). Absent a showing of cause and prejudice or his actual innocence, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). Nevertheless, because the Circuit Court also addressed the merits of the claim, this Court follows suit.

> If the evidence was presented it would show that the victim, P.L., is the 17 year old daughter of the defendant's girlfriend.
>
> The victim, her mother and the defendant all resided together at 3326 Sunnyside Drive in the City of Hampton, Virginia.
>
> On the morning of April 25th, 2011, the victim was asleep in her bedroom at 3326 Sunnyside Drive in Hampton. The victim's mother had already left for work.
>
> The victim woke up when she felt someone touching her buttocks. The defendant was standing at the foot of the victim's bed and began pulling her down to the foot of the bed. The victim was struggling and shouting no. The defendant said to the victim let me eat it. The victim struggled and kicked but the defendant managed to pull her panties down and inserted his fingers in her vagina. The defendant then licked his finger.
>
> The victim managed to get away and ran outside wearing only underwear and a shirt.
>
> The victim saw a neighbor and went to him and they went inside his house where she called the police, her mother and her brother.

(Dec. 15, 2011 Tr. 10–11.) After the conclusion of the proffered evidence, counsel for Williams

agreed that Williams accepted the evidence presented. (Dec. 15, 2011 Tr. 11–12.) The Circuit

Court found Williams guilty of all object sexual penetration and sexual battery. (Dec. 15, 2011

Tr. 12.)[4]

In rejecting Williams's claim from his State Habeas Petition pertaining to the validity of

the guilty plea, the Circuit Court explained:

> During the plea colloquy, Petitioner told the Court he fully understood the charges against him and had enough time to talk to his attorney about the charges, their elements, possible defenses, and his potential pleas. He told the Court that he has chosen himself to plead guilty, and he was doing so because he was guilty. Petitioner confirmed that he understood that his guilty plea meant he was not entitled to be tried by a jury, to refuse to incriminate himself, to confront his accusers, or to defend himself. He also confirmed no one had threatened or forced him to plead guilty and that he received no promised in exchange for his guilty pleas. Williams told the Court he understood that he could receive life imprisonment as a maximum sentence and had discussed the sentencing

---

[4] Williams also appealed a sentence from the Hampton Juvenile and Domestic Relations Court imposed because Williams violated a protective order that prohibited any contact between Williams, the victim, or her mother. The Circuit Court also found Williams guilty of violating that protective order. (Dec. 15, 2011 Tr. 11–12.) Williams later withdrew his appeal. (Dec. 15, 2011 Tr. 30–32.) Williams does not appear to challenge anything pertaining to the violation of the protective order.

guidelines with counsel. Finally, Petitioner stated that he was entirely satisfied with counsel and had no questions of the court. Based on these answers, the Court accepted the guilty pleas.

Accordingly, the Court finds that Petitioner is bound by these statements that his plea was voluntary and that he was satisfied with counsel. *See Anderson v. Warden*, 222 Va. 511, 516, 281 S.E.2d 885, 888 (1981) (defendant cannot impeach open-court declarations); *Beck v. Angelone*, 261 F.3d 377, 396 (4th Cir. 2001). The Court further finds that because he offers no valid reason for controverting the statements in his plea colloquy, they conclusively establish the voluntariness of his plea and his satisfaction with counsel. *Anderson*, 222 Va. at 516, 281 S.E.2d at 888; *see also Beck*, 261 F.3d at 396 (clear and convincing evidence required to contradict representations made during plea colloquy).

Moreover, the Court finds that although Petitioner offers his pre-sentence statements to the probation officer and evaluating doctor as evidence that his plea was involuntary, he disavowed these statements when he testified at sentencing. Petitioner explained that he denied his guilt to the probation officer and doctor because he was "not facing reality of the choice that I made, um, being true, denial," and that he was, "scared, frustrated, um, mad with myself." When speaking to the doctor, Petitioner "hadn't accepted the fact that I made a bad choice." Petitioner further admitted that he forced the victim to have sexual contact against her will, admitted penetrating her body without her consent, and admitted he hurt her by doing that. The Court finds that, just as he is bound by his plea colloquy, Petitioner is bound by his sworn statements at sentencing that he was guilty and that his unsworn statements to the probation officer and doctor were products of mere denial and frustration, not innocence. *Anderson*, 222 Va. 516, 281 S.E.2d at 888.

The Court finds that Petitioner further admitted his guilt in a July 28, 2012 letter to the Court asking for sentence reconsideration. He claimed to "understand the seriousness of my case" and be "very[,] very remorseful [and] ashamed."

Finally, the Court finds that counsel denies ever coercing or threatening Petitioner or stating he had spoken to the judge.

(ECF No. 15–3, at 3–4 (paragraph numbers omitted).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." *United States v. Martinez*, 424 F. App'x. 208, 208 (4th Cir. 2011) (alterations in original) (quoting *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993)); *Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969). By pleading guilty, Williams waived

his right to contest the sufficiency of the evidence. Thus, to the extent he intends to argue that the evidence against him was insufficient, that claim is foreclosed from review here.

Moreover, as the Circuit Court found, Williams freely admitted his guilt during the plea colloquy and swore that he was entering his guilty plea because he was indeed guilty. (Dec. 15, 2011 Tr. 6–7.) Williams swore it was his decision alone to plead guilty. (Dec. 15, 2011 Tr. 6.) While Williams now contends that he only answered affirmatively to the Court's questions because counsel told him he had to, these statements appear to refer to the Court's questioning of Williams during the sentencing hearing, not during his guilty plea hearing. (*See* Resp. 3.) Moreover, this statement is belied by his statements under oath, including his statement to the Circuit Court that he has answered all of the Circuit Court's statements truthfully. (Dec. 15, 2011 Tr. 10.) Because the record establishes that Williams knowingly and voluntarily entered his guilty plea, Claim One (a) is foreclosed from review here.

## VI.    INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective

10

assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Williams that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

### A.     Claims Williams Raised in State Court

In Claim Two, Williams argues that "counsel fail[ed] to introduce mitigating [DNA] evidence." (§ 2254 Pet. 10.) In Claim Four, Williams argues that counsel was ineffective because he violated Williams's "[r]ight to have favorable witness[es]" during sentencing. (*Id.* at

11

15.) In rejecting these claims, the Circuit Court thoroughly explained their lack of merit as follows:

As a preliminary matter, given the facts of this case, the Court finds that Petitioner fails to demonstrate prejudice with regards to any allegation because no rational defendant in Petitioner's circumstances would have insisted on proceeding to trial. The record establishes that Petitioner awoke P.L., made a graphic request, and then forcibly digitally penetrated her, causing an internal abrasion. There was no question of identity, as Petitioner had long dated P.L.'s mother, and P.L. immediately fled her home and called the police. Petitioner admitted to police that he twice touched P.L.'s vagina, and he wrote," I am sorry I touched you in a bad manner." In response to this overwhelming evidence, Petitioner includes his prior denials to assert a defense that he merely startled P.L. while waking her and never penetrated her, a story he claims is supported because there was no DNA transfer detected between them. Petitioner faced life in prison for his crime; instead, he received an active sentence of twelve and a half years. Given the physical evidence of forcible penetration, the immediate outcry, and no possible misidentification defense, the Court finds that no reasonable defendant would have gone to trial to risk a life sentence rather than accepting the plea agreement. Accordingly, the Court finds that Petitioner cannot establish the prejudice prong of *Strickland*. *See Padilla v. Kentucky*, 559 U.S. [356,] 372 [(2010)]; *Hill*, 474 U.S. at 59–60; *Lewis* [v. *Warden of the Fluvanna Corr. Ctr.*], 274 Va. [93,] 118, 645 S.E.2d [492,] 507 [(2007)].

[In Claim Two,] Petitioner alleges counsel was ineffective because he "never advised on any stragdy [sic] to present the [DNA] evidence[5] in court." Moreover, Petitioner complains that the only evidence gathered from the victim that was tested was fingernail scrapings; genital samples and her underwear were not tested. Petitioner alleges that, "If counsel would have advised a stragdy [sic] for the DNA testing, I would have taken it to trial."

The Court finds that petitioner fails to proffer a strategy that could have been successful. Petitioner admits that he and counsel discussed the DNA and that counsel explained "touching someone you don't always leave DNA." The Court notes that there were no allegations involving Petitioner's bodily fluids and that the allegation was that Petitioner forced his fingers into the victim's vagina, and the victim had a corresponding internal abrasion. The Court finds that Petitioner offers no scientific or legal support for his claim that an absence of DNA "would prove without a reasonable doubt that I never touched the victims [sic] panties or her." Hence, the Court finds this argument fails because it is conclusory. *Fitzgerald* [v. *Bass*], 6 Va. App. [38,] 44, 366 S.E.2d [615,] 618 [(1988)]; *see also Nickerson v. Lee*, 971 F.2d 1125, 1336 (4th Cir. 1992) ("in order to obtain an evidentiary hearing on an ineffective assistance of counsel claim — or, for that matter, on any claim — a habeas petitioner must come

---

[5] The Court notes that petitioner must mean evidence of the absence of DNA, because no DNA from the victim was found on Petitioner's fingers or nail clippings and the Petitioner's DNA was not found inside the victim's vagina.

forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle petitioner to an evidentiary hearing.").

To the extent that Petitioner is asserting that his plea was not voluntary because he did not pursue this defense, the Court finds this claim unavailing. Petitioner admits in his Petition that he discussed this defense with counsel. He further affirmed for the Court during his plea colloquy that he had discussed defenses with counsel. The Court finds that Petitioner is bound by his statements that he chose to forgo those defenses and instead plead guilty. *Anderson*, 222 Va. at 516, 281 S.E.2d at 888; *Beck*, 261 F.3d at 396.

Accordingly, [Claim Two] is dismissed because Petitioner has failed to meet his burden under either prong of *Strickland*.

[In Claim Three,] Petitioner alleges counsel was ineffective for failing to call character witnesses during sentencing. Petitioner states that, "Witnesses were willing & able and present to take the stand on my behalf. Both had knowledge of Plaintiff's motive." Petitioner identifies only one witness, David Parker, from whom he attaches an unsworn letter.

"*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case." *Lewis*, 274 Va. at 113, 645 S.E.2d at 503 (quoting *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) and *Yarbrough v. Warden of Sussex I State Prison*, 269 Va. 184, 197, 609 S.E.2d 30, 37 (2005)). "Rather, in deciding whether trial counsel exercised reasonable professional judgment with regard to the investigation and presentation of mitigation evidence, a reviewing court must focus on whether the investigation resulting in counsel's decision not to introduce certain mitigation evidence was itself reasonable." *Lewis*, 274 Va. at 113, 645 S.E.2d at 503 (citation omitted).

The Court finds that Petitioner concedes counsel spoke with witnesses, and hence there is no question that counsel conducted an investigation. The Court further notes that the decision to call witnesses is generally a strategic decision that should be not be second-guessed on habeas. *See, e.g., Bunch v. Thompson*, 949 F.2d 1354, 1363–64 (4th Cir. 1991); *Abbott v. Peyton*, 211 Va. 484, 486–87, 178 S.E.2d 521, 523 (1971). The Court finds that Petitioner proffers no reason to question either the adequacy of counsel's investigation or the reasonableness of his strategic choices.

To the extent Petitioner asserts any other witness other than David Parker was willing and able to testify, the Court finds Petitioner has failed to identify him or her and to proffer his or her proposed testimony. The Court further finds that this failure is fatal to Petitioner's claim regarding any such witness because he has not established either the existence of such witness or what helpful testimony he or she had to offer. *See Muhammed v. Warden*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) (failure to proffer affidavits regarding witnesses' proposed trial testimony is fatal to claim that counsel was ineffective for not calling those witnesses); *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (assertion of ineffective assistance due to failure to call more witnesses at

sentencing was fatally undermined by failing to adduce evidence as to what they would have said).

Moreover, the Court finds that Petitioner cannot establish prejudice because there is no reason to believe that the witnesses would help him. The Court finds that, had Mr. Parker testified that Petitioner "never [did] anything to indicate he could be involved in a crime like this," such testimony would not have caused a lesser sentence. Moreover, the Court finds that, had Mr. Parker testified that the victim had some sort of "motive" to lie, the Court may have viewed such testimony as evidence Petitioner was not accepting responsibility for sexually assaulting a child and accordingly punished him more severely.

Similarly, the Court finds that Mr. Parker's proposed testimony that Petitioner was raised in a good home and taught right from wrong would not have served as mitigating evidence and could have been harmful to Petitioner's sentence. Accordingly, the Court finds that counsel did not perform unreasonably by failing to put on double-edged evidence. *See Lewis*, 274 Va. at 116, 645 S.E.2d at 505. To the extent that Mr. Parker may have testified about the effect of Petitioner's sentence on his family, the Court finds that would not have been proper mitigation evidence and, therefore, its absence cannot establish prejudice. *Lawlor v. Commonwealth*, 285 Va. 187, 245, 738 S.E.2d 947, 880 (2013) (effect of sentence on defendant's friends and family is not mitigation). Accordingly, the Court finds that there has been no proffer of relevant, helpful mitigation evidence that Parker could have presented, and Petitioner was not prejudiced when Parker did not testify,

Accordingly, [Claim Three] is dismissed because Petitioner has failed to meet his burden under either prong of *Strickland*.

(ECF No. 15–3, at 6–10 (eighth, ninth, eleventh alterations in original) (paragraph numbers and headings omitted).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in the Circuit Court's rejection of these claims. *See* 28 U.S.C. § 2254(d)(1)–(2).

Williams fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to introduce "mitigating" DNA evidence or have favorable witnesses testify at his sentencing. First, with respect to Claim Two, Williams fails to identify with specificity how counsel could have "use[d] [the] DNA test as a basis to formulate a defense." (§ 2254 Pet. 10.) Williams seemingly believes that because none of Williams's DNA was found on the victim that necessarily means he could not have inserted his finger in her vagina. Williams offers nothing to

support his conclusion. Moreover, as the record establishes, counsel discussed with Williams that the DNA evidence would not be "mitigating" as Williams now suggests. Counsel reasonably eschewed creating a defense based on a lack of Williams's DNA on the victim in light of the overwhelming evidence of his guilt. In addition, Williams fails to demonstrate any prejudice from counsel's lack of development of a DNA defense strategy. Williams fails to demonstrate that a reasonable defendant in his position, but for counsel's purportedly deficient lack of defense strategy, would not have pleaded guilty and would have insisted on proceeding to trial. *Hill*, 474 U.S. at 59.

With respect to Claim Four, Williams fails to demonstrate that counsel was deficient or that he was prejudiced by counsel not calling mitigating witnesses at sentencing. While Williams faults counsel for failing to call "two witnesses" (§ 2254 Pet. 15), he only identifies David Parker and attaches a letter from Parker indicating what Parker's testimony might be about Williams. (*See id.* at 17.) To the extent Williams believes that David Parker could have offered favorable testimony, as the Circuit Court thoroughly explained, David Parker's thoughts about Williams's upbringing were not mitigating evidence, and counsel reasonably eschewed calling Parker at sentencing. (*See* ECF No. 15-3, at 8–10.) Williams fails to identify any other witness who could have provided mitigating evidence at sentencing or what he or she would have testified to in mitigation. Thus, Williams's conclusory allegations fail to demonstrate deficient performance or prejudice under Strickland. *Cf. United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory testimony); *Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (requiring proffer of mitigating evidence to state a claim of ineffective assistance).

Claims Two and Four lack merit and will be DISMISSED.[6]

## B.     Claims Not Raised in State Court

In Claim Three, Williams argues that counsel was ineffective because he failed to present

mitigating evidence or put on a defense case. (§ 2254 Pet. 12–13.)  In Claim Five, Williams

argues that counsel "fail[ed] to inform Petitioner of the right to appeal." (*Id.* at 19.)  Respondent

argues that these claims are defaulted, because Williams failed to raise these claims in state

court. (Br. Supp. Mot. Dismiss 7–8.)  Respondent also argues that *Martinez v. Ryan*, 566 U.S. 1

(2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), do not apply here to excuse Williams's

default. (Br. Supp. Mot. Dismiss 8–9.)  Nevertheless, because Williams had no counsel at his

"initial-review collateral proceeding," *Martinez*, 566 U.S. at 16, and because his claims clearly

lack merit, the Court turns to the merits of Claims Three and Five.

In Claim Three, Williams argues that counsel was ineffective because he failed to present

mitigating evidence or put on a defense case. (§ 2254 Pet. 12–13.)  In support of this claim,

Williams states, in sum:

> Counsel's less than vigilant approach and unwillingness to proffer any type of
> defense or use any mitigating evidence in representation fell well below any
> objective standard of reasonableness.  Almost a complete absence of effort on the
> part of counsel to investigate, develop, and present mitigating evidence.  Even
> after the Petitioner told counsel repeatedly he was innocent, counsel continued to
> only discuss that the Petitioner plead guilty.  Counsel failed to subject prosecution
> to meaningful adversarial challenge.   There was no cross-examination from
> counsel on any of the prosecution witnesses. The purpose of the 6th Amendment
> right to confrontation, which counsel denied the Petitioner [is] shown time an[d]

---

[6] Williams does not raise a freestanding claim that counsel rendered ineffective assistance by
forcing him to plead guilty. Even if he had, that claim lacks merit. Williams swore under oath
that no one had pressured or threatened him into pleading guilty, it was his own choice to plead
guilty, and he was satisfied with counsel's services. He also fails to demonstrate that "there is a
reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty
and would have insisted on going to trial." *Hill*, 474 U.S. at 59. As the Circuit Court reasonably
determined, no rational defendant  would have insisted on proceeding to trial, in light of the
overwhelming evidence against him and the prospect of a sentence of up to life in prison.

time again on record in the transcripts. Counsel's failure to object to introduction
of out of state traffic convictions used by the prosecution. . . .

(*Id.*)[7] Again, Williams's claim lacks any supporting factual details. For example, Williams fails

to identify any mitigating evidence or defense strategy or theory that he desired counsel to

develop and present. He also fails to identify which prosecution witnesses counsel should have

cross-examined and what the content of that cross-examination would have been. Once again,

Williams's vague and conclusory allegations fail to demonstrate any deficiency of counsel or

resulting prejudice under *Strickland*. *Terry*, 366 F.3d at 316; *Bassette*, 915 F.2d at 940–41; *see*

*Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of habeas relief appropriate

where petitioner "stated only bald legal conclusions with no supporting factual allegations").[8]

Accordingly, Claim Three lacks merit and will be DISMISSED.

In Claim Five, Williams argues that counsel "fail[ed] to inform Petitioner of the right to

appeal." (§ 2254 Pet. 19.) Williams claims that he "didn't know of the right to appeal until he

wrote counsel asking for the transcript of his case" in 2013. (*Id.*) Williams fails to demonstrate

any deficiency of counsel or resulting prejudice based on this terse and conclusory allegation.

*Sanders*, 373 U.S. at 19. For this reason alone, Claim Five can be dismissed.

---

[7] It is unclear whether Williams faults counsel for failing to develop a defense prior to
Williams's guilty plea or after the entry of his guilty plea and before sentencing, as Williams
continues to use the word "mitigating." To the extent that Williams faults counsel for not
developing a defense to the underlying crimes after Williams entered a guilty plea, counsel is
simply not ineffective for failing to do that. After his client entered into a valid guilty plea,
counsel would have reasonably eschewed arguing that Williams was innocent at that late
juncture. To do so would have invalidated the guilty plea and its inherent benefits and subjected
Williams up to life in prison.

[8] To the extent that Williams faults counsel for "fail[ing] to object to introduction of out of state
traffic convictions" (§ 2254 Pet. 13), the Court assumes that Williams means during sentencing.
Nothing in the record indicates that the prosecution introduced these tickets or that the Court
considered these "out of state traffic convictions" in fashioning a sentence. Thus, Williams fails
to demonstrate any deficiency of counsel or prejudice.

Additionally, Williams's claim is belied by the record and lacks merit. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). This determination must take into account "all the information counsel knew or should have known." *Id.* (citation omitted). If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.* at 478. The prejudice prong requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.* at 484 (citations omitted).

Williams never states that he told counsel to appeal or gave counsel any indication that he wanted to appeal. Williams just vaguely swears that counsel "never said anything about an appeal." (ECF No. 18–2, at 2.) The record indicates otherwise. During his guilty plea hearing, Williams agreed that he was waiving his right to file an appeal. Additionally, counsel avers that he "discussed the entire legal process of his case with Mr. Williams, including his right to appeal." (§ 2254 Pet. 22.) Counsel swears that "[b]efore his sentencing hearing, I discussed with Mr. Williams his right to appeal in light of the likely impact on his sentence of his statements to the probation officer. He indicated that he did not want to appeal." (*Id.*) Finally, counsel avers that: "Following the sentencing hearing, I spoke with Mr. Williams again

18

regarding his right to appeal and he again indicated that he did not want to appeal." (*Id.*)[9] Thus, the record demonstrates that counsel actually consulted with Williams about an appeal and that Williams indicated that he did not desire to file an appeal. "[A]n attorney is under no obligation to file a notice of appeal where the defendant explicitly instructs his attorney not to file one." *United States v. Poindexter*, 492 F.3d 263, 268 (4th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 477). Again, Williams's claim fails on this basis alone.

Even if counsel had not consulted with Williams, his performance would still have been reasonable. In this situation where Williams expressed no interest in appealing, the relevant inquiry is "whether the circumstances would reasonably have led counsel to conclude that a 'rational defendant would want to appeal,' thus prompting counsel's duty to consult. *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010) (citing *Flores-Ortega*, 528 U.S. at 480).

> In determining whether a rational defendant would have wanted to appeal, [the Court] consider[s] important the facts concerning whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentenced bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights.

*Id.* (citing *Flores-Ortega*, 528 U.S. at 480). A defendant's expression of an interest in appealing, without more, does not establish that he would have appealed but for counsel's deficient performance. *Flores-Ortega*, 528 U.S. at 486. As explained below, Williams fails to

---

[9] In response to a letter from Williams in June 2013, counsel also explained:

> Throughout your case, I fully informed you regarding all of your options at every stage of the proceedings. Your assertion that I did not discuss your right to appeal with you is false. It is true that when we discussed your right to appeal I advised you against doing so because I did not believe the Court has committed any appealable error. Advising against an appeal is not the same thing as neglecting to advise about the possibility of appealing.

(§ 2254 Pet. 21.)

demonstrate that the circumstances would have reasonably led counsel to conclude that a rational defendant would want to appeal. Williams also fails to demonstrate any resulting prejudice.

Williams fails to identify why he was interested in filing an appeal. While Williams now contends he did not want to plead guilty because he was "innocent," Williams's innocence argument seemingly rests on his belief that there was insufficient evidence to prove that he was guilty.[10] As previously set forth, that is simply not true. Counsel reasonably perceived that overwhelming evidence existed of Williams's guilt and that the guilty plea was Williams's best chance for a lighter sentence. Moreover, the record demonstrates that Williams swore to the Circuit Court that he was indeed guilty of the charges and that it was his decision to plead guilty. (Dec. 15, 2011 Tr. 6–7.) Williams also agreed that he understood that by pleading guilty he "waiv[ed] any right to appeal the decision of this Court." (Dec. 15, 2011 Tr. 9.) A reasonable attorney would believe that a client who admitted in open court that he was guilty of the charges

---

[10] For the first time in his Response, Williams sets forth an alternative statement of what he claims occurred, which is not sworn to under penalty of perjury. In this statement, he claims he never touched the victim. (Resp. 2, ECF No. 18.) However, in his affidavit, sworn to under penalty of perjury, Williams fails to make the same statement, and he does not deny that he engaged in the activity for which he was convicted; instead, he just repeatedly says that he is "innocent." (ECF No. 18-2, at 1–2.) A deeper review of the state court record indicates that Williams bases his claim of innocence on the fact that he told his probation officer and the doctor examining him for the presentence report that he did not engage in the activity alleged. State Habeas Petition 9–12. That same report also indicated that Williams confessed to the police that touched the victim on the vagina twice, but that Williams denied it during his evaluation. *Id.* at 12–13. Williams's statements to the doctor are internally inconsistent as he states that he only touched the victim's back, *id.* at 12, but then states that he wrote to the victim "I'm sorry I touched you in a bad manner," because he "thought it referred to waking her up by putting his hand on her buttocks." *Id.* at 13. Williams's statements to the doctor also contradict his newest version of the facts—that he never touched the victim—and demonstrate how Williams's story has evolved.

When questioned about these statements at sentencing, Williams indicated that he had not told the truth to the probation officer or doctor either because he was "not facing reality of the choices that I made, um being true, denial" and that he "was scared, frustrated, um, mad at myself." (June 22, 2012 Tr. 16.) Williams also admitted again that he forced the victim to have sexual contact against her will and admitted to penetrating her body without consent. (June 22, 2012 Tr. 18–19.)

and understood that he waived his right to appeal and who received a significantly lower sentence than life would not want to appeal that conviction or sentence.[11]

To the extent that Williams is unhappy with his twelve and a half-year sentence for object sexual penetration and one-year sentence for sexual battery, again, counsel would be justified in thinking that no reasonable defendant in Williams's position would want to appeal. Without the benefit of his guilty plea, Williams faced up to life in prison.[12] During his guilty plea proceedings, Williams agreed that he understood that he could receive up to life in prison and also agreed that he waived any right to appeal. Williams fails to identify, and the Court fails to discern, any nonfrivolous grounds upon which he could have appealed his sentence. Thus, having entered into a knowing and voluntary plea agreement, having the benefit of a plea that significantly decreased Williams's sentencing exposure, and because no nonfrivolous grounds for appeal remained, counsel would be justified in thinking that no reasonable defendant in Williams's position would want to appeal his sentence. *See Flores-Ortega*, 528 U.S. at 479–80.

Even if the Court found that counsel acted deficiently because he failed to consult with Williams about an appeal, Williams fails to demonstrate any resulting prejudice. Williams has

---

[11] During sentencing, Williams indicated that he was "extremely remorseful, devastated to be the cause of it" and that he was "embarrassed for my family and myself . . . for the bad choice that I made, a crime . . . ." (June 22, 2012 Tr. 33.) Indeed, even in August 2012, after the time to appeal had expired, Williams did not appear to think he was innocent. Williams filed a motion in the Circuit Court asking for the court to reconsider his sentence, but never indicated that he was not guilty of the charges. To the contrary, Williams stated: "I do understand the seriousness of my case, and I'm very, very remorseful [and] ashamed of this whole situation not only for me but more so for the party involved and my family. For the rest of my life I will wake up and carry the shame, the burden of all of this on my shoulder, and I accept that." Letter 1, *Williams v. Commonwealth*, No. CR11–1088 (Va. Cir. Ct. filed Aug. 7, 2012). He further indicates that his "action" had impacted his entire family. *Id.* at 3.

[12] A conviction of object sexual penetration carried a sentence of up to life in prison. *See* Va. Code Ann. § 18.2–67.2(B) (West 2017).

not demonstrated that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484.[13]

In sum, Williams demonstrates no deficiency of counsel for failing to consult with him about an appeal, and no prejudice from counsel's actions. Accordingly, Williams's claim that counsel rendered ineffective assistance by failing to inform him of the right to appeal lacks merit. Claim Five will be DISMISSED.

## VII.   CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 13) will be GRANTED. Williams's § 2254 Petition will be DENIED. The action will be DISMISSED. The Court will deny a certificate of appealability.[14]

An appropriate Final Order shall issue.

/s/

Roderick C. Young
United States Magistrate Judge

Date:  March 16, 2017
Richmond, Virginia

---

[13] Williams received a sentence that was far less than life in prison. Moreover, Williams has not identified, and the Court fails to discern, any nonfrivolous grounds for appeal. To the contrary, Williams has advanced no challenge to his sentence, just the vague claim that he wanted to appeal. Thus, Williams fails to demonstrate any prejudice from counsel's failure to file an appeal of his sentence.

[14] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Williams fails to meet this standard.